UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                    )
BASELOAD ENERGY, INC.,              )
                                    )
            Plaintiff,              )
                                    )
    v.                              )   Civil Action No. 08-1838 (PLF)
                                    )
BRYAN W. ROBERTS,                   )
                                    )
            Defendant.              )
_____ )


OPINION

Plaintiff Baseload Energy, Inc. ("Baseload"), filed this action seeking a declaratory judgment that a patent owned by defendant Bryan W. Roberts is invalid and unenforceable under federal law. This matter is before the Court on Mr. Roberts' motion for summary judgment, third party Sky WindPower Corporation's ("SWPC") motion to intervene as a defendant, and Baseload's motion to stay the motion to intervene and for leave to take discovery.[1] After consideration of the parties' claims and arguments, the Court will grant Mr. Roberts' motion for summary judgment and deny the remaining motions as moot.[2]

---

[1] Mr. Roberts has moved to dismiss Baseload's complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). For reasons discussed below, the Court has converted that motion into a request for summary judgment.

[2] Relevant papers submitted by the parties and reviewed by the Court include: Baseload's Complaint ("Compl."); Mr. Roberts' Motion for Summary Judgment (converted from a motion to dismiss) ("Mot. Summ. J."); Baseload's Opposition to Defendant's Motion for Summary Judgment ("Opp. Summ. J."); Mr. Roberts' Reply to Plaintiff's Opposition to Defendant's Motion for Summary Judgment ("Reply Summ. J."); Bryan Roberts' Declaration in support of the motion for summary judgment ("Roberts Decl."); SWPC's Motion to Intervene as a Defendant; Baseload's Memorandum in Opposition to SWPC's Motion to Intervene and in

I. BACKGROUND

This action represents the second round of litigation between these parties or their affiliates concerning the device they term a "flying electric generator" ("FEG"). Compl. ¶¶ 7-14; Mot. Summ. J. 2. The FEG is a harvester of wind power, a platform designed to hover in the air at high altitudes and to use wind to generate mechanical energy, which in turn is transformed into electricity. Compl. Ex. 1 at 4. Mr. Roberts owns U.S. Patent No. 6,781,254 ("the '254 patent"), which covers a refinement of the FEG that can remain stable and suspended in the air even in the absence of wind. Id. Mr. Roberts founded SWPC, the would-be intervenor in this action, for the purpose of reproducing and marketing the FEG. Compl. ¶ 9.

On May 4, 2007, Baseload's predecessor, Sky Power, and David Resnick, owner first of Sky Power and now of Baseload, filed suit ("the 2007 litigation") in the United States District Court for the Southern District of California against SWPC and Mr. Roberts, among others. See Roberts Decl. Ex. 1 at 1; Compl. ¶¶ 9-11. Mr. Resnick and Sky Power brought claims for, inter alia, anticipatory breach of contract and promissory estoppel. Roberts Decl. Ex. 1 at 1. They alleged that Mr. Roberts and SWPC had reneged on an agreement with the plaintiffs to create a new business for commercializing FEG technology, to transfer the '254 patent to that business, and to appoint Mr. Resnick the CEO of the new firm. See id. at 3-9; Compl. ¶¶ 10-11. The complaint included no allegations of patent invalidity.

---

Support of Plaintiff's Motion to Stay the Motion to Intervene and for Leave to Take Discovery; and SWPC's Reply to Baseload's Opposition to the Motion to Intervene.

To bring an end to that prior round of litigation, SWPC, Sky Power, Baseload, Mr. Roberts, and Mr. Resnick, among others, entered into a settlement agreement dated March 19, 2008 ("the 2008 Settlement Agreement"). See Roberts Decl., Ex. 2. The Agreement provided that the pending claims against Mr. Roberts and SWPC would be discharged, and that Mr. Roberts would grant Baseload an option to acquire a nonexclusive license to use the technology claimed by the '254 and other FEG-related patents at a price of $1.75 million. Compl. ¶¶ 11-12. It also contained the following release provision:

> 3. <u>Resnick Parties' Release</u>. Resnick, SPLLC [Sky Power], BEI [Baseload], and Grenier,[3] on behalf of themselves, any entity in which any of them has an interest and any employee, affiliate, or co-owner of any such entity, and their respective spouses, agents, partners, members, representatives, heirs, attorneys, shareholders, officers, directors, employees, affiliates, parents, subsidiaries, successors and assigns (collectively, "Resnick Parties"), forever release and discharge Shepard,[4] the Shepard estate, SWPC and Roberts, any entity in which any of them has an interest and any employee, affiliate or co-owner of such entity, and their respective predecessors, successors and present or former affiliates and their respective spouses, agents, members, representatives, heirs, attorneys, shareholders, officers, directors, employees, affiliates, parents, subsidiaries, successors and assigns (collectively, "SWPC Parties"), of and from any and all losses, liabilities, claims, expenses, demands and causes of action of every kind and nature, known and unknown, suspected and unsuspected, disclosed and undisclosed, fixed and contingent, whether direct or by way of indemnity, contribution or otherwise, that the Resnick Parties ever had, now have, or hereafter may have or be able to assert against the SWPC Parties by reason of any matter, cause or circumstance whatsoever arising or occurring prior to and including the date of this Agreement, as stated in its first sentence, that arise from or

---

[3] Al Grenier was a participant in the prior action who is not a party to the instant litigation.

[4] David Shepard was also a defendant in the 2007 litigation who has not been named as a defendant in this case.

> relate in any way, directly or indirectly, to SWPC, the Resnick Action, the Grenier Action or any plan or effort to research or develop a flying electric generator ("FEG").

Settlement Agreement ¶ 3. Paragraph 4 of the Agreement contained a similar release of all claims that could be brought by Mr. Roberts and/or SWPC against Mr. Resnick, Baseload, or Sky Power. See id. ¶ 4. Paragraph 5 of the Agreement expanded the scope of the release provisions as follows:

> 5. <u>Section 1542 Waiver</u>. Each party acknowledges that additional or different facts may be discovered of which he or she is unaware and states that he or it intends nevertheless fully, finally and forever to release all claims within the scope of paragraphs 3 and 4 above notwithstanding the discovery of such additional or different facts. Each party is aware of and hereby waives to the fullest extent permitted by law the benefit of California Civil Code 1542, which reads as follows:
>
>> "A general release does not extend to claims which the creditor does not know or expect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor."
>
> and any other statute, rule or law that might limit the generality or binding effect of a release in accordance with its terms. Anything herein to the contrary notwithstanding, the releases given in paragraphs 3 and 4 shall not cover or extend to any losses, liabilities, claims, expenses, demands and/or causes of action arising from or relating to the breach by any party of this Agreement or Exhibits C or D attached thereto.

Settlement Agreement ¶ 5. And Paragraph 6 provided:

> 6. <u>No Other Claims</u>.  The parties hereto represent and warrant that they are aware of no right or claim, and no fact that might give rise to a right or claim, against a released party or his or its related persons and entities referred to in paragraphs 3 or 4 above that this Agreement does not effectively release.

Settlement Agreement ¶ 6.  Pursuant to a joint stipulation of the parties, the claims brought against SWPC and Mr. Roberts in the Southern District of California were dismissed by the court with prejudice.  See Roberts Decl., Ex. 3.

On September 15, 2008, the licensing option granted to Baseload pursuant to the Settlement Agreement lapsed when the company was unable to secure sufficient financing to pay the $1.75-million licensing fee. As a result, Baseload cannot develop the FEG technology at issue without risking an infringement suit brought by Mr. Roberts.  See Compl. ¶ 14.  A little over a month after the lapse of the option, on October 27, 2008, Baseload filed the instant action, seeking a declaratory judgment to invalidate the '254 patent.  Mr. Roberts now moves for summary judgment, arguing that Baseload's claims are barred by the release provisions contained in the 2008 Settlement Agreement.

## II. DISCUSSION

### A.  Mr. Roberts' Motion for Summary Judgement

Mr. Roberts has framed his motion as a request for dismissal pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  Such motions are meant to test the legal sufficency of claims alleged in a complaint and should not contain material drawn from outside the pleadings.  See FED. R. CIV. P. 12(b)(6), 12(d).  Mr. Roberts, however, has filed with his motion a copy of the 2008 Settlement Agreement with Baseload and a declaration made by his attorney.[5]  Because the Settlement Agreement is central to this case, the Court will reclassify Mr.

---

[5]     Mr. Roberts has pointed out that, in reviewing motions brought under Rule 12(b)(6), courts often consider certain materials in addition to the complaint, including "'matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the

Roberts' motion as one for summary judgment under Rule 56.  See FED. R. CIV. P. 12(d).

Rule 12 requires that when a motion is converted in this way, the non-moving party must be given notice of the change and an opportunity to "present all the material that is pertinent to the motion."  FED. R. CIV. P. 12(d).  That requirement is satisfied here because the non-moving party, Baseload, has already anticipated the conversion of the motion.  In its opposition Baseload asserts that Mr. Roberts' motion should be judged by a summary judgment standard.  See Opp. Summ. J. at 5 n.4.  Baseload has also taken the opportunity to introduce its own evidence from outside the pleadings. See id., Ex. 1 (Declaration of John E. Andrews). Furthermore, Baseload does not dispute the accuracy of the copy of the Settlement Agreement offered by Mr. Roberts.  As a result, this matter is properly before the Court as a motion for summary judgment.

1.  Standard of Review

Summary judgment may be granted if "the pleadings, the discovery and disclosure materials on file, and any affidavits [or declarations] show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(c); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986); Holcomb v. Powell, 433 F.3d 889, 895 (D.C. Cir. 2006).  "A fact is 'material' if a dispute over it might affect the outcome of a suit under the governing law; factual disputes that are 'irrelevant or

---

complaint whose authenticity is unquestioned.'"  Meijer, Inc. v. Biovail Corp., 533 F.3d 857, 862 n.* (D.C. Cir. 2008) (citing 5A CHARLES ALAN WRIGHT, ARTHUR R. MILLER, & MARY KAY KANE, FEDERAL PRACTICE & PROCEDURE § 1357).  The copy of the Settlement Agreement appended to Mr. Roberts' motion to dismiss falls squarely into none of those categories, and so the Court will treat the motion as one for summary judgment.

unnecessary' do not affect the summary judgment determination." Holcomb v. Powell, 433 F.3d at 895 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. at 248). When considering a summary judgment motion, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [their] favor." Id. at 255; see also Washington Post Co. v. U.S. Dep't of Health and Human Servs., 865 F.2d 320, 325 (D.C. Cir. 1989).

Settlement agreements such as the one signed by the parties here in 2008 "are in the nature of contracts." See Makins v. Dist. of Columbia, 277 F.3d 544, 546-47 (D.C. Cir. 2002) (citing Gaines v. Cont'l Mortgage & Inv. Corp., 865 F.2d 375, 378 (D.C. Cir. 1989)). "In cases in which the dispositive issue involves the construction of a contract, summary judgment may be appropriate if the provisions of the contract are unambiguous." Davis v. Chevy Chase Financial Ltd., 667 F.2d 160, 169 (D.C. Cir. 1981); see also America First Inv. Corp. v. Goland, 925 F.2d 1518, 1520 (D.C. Cir. 1991); Farmland Indus., Inc. v. Grain Bd. of Iraq, 904 F.2d 732, 735-36 (D.C. Cir. 1990); Minebea Co. v. Papst, 374 F.Supp.2d 202, 208-09 (D.D.C. 2005). Furthermore, it is settled that whether a contract term is ambiguous is a question of law to be determined by the court. See Minebea Co. v. Papst, 374 F.Supp.2d at 208-09.

2. Effect of the 2008 Settlement Agreement

Mr. Roberts has moved for summary judgment on the ground that Baseload's claims are barred by the release included in Paragraphs 3, 5 and 6 of the 2008 Settlement Agreement between Baseload, Mr. Resnick, Mr. Roberts, and SWPC, among others. Baseload does not suggest that the copy of the Settlement Agreement filed with Mr. Roberts' motion is inaccurate or that the agreement should be rescinded. Instead, Baseload relies upon a strained

reading of the Supreme Court's decision in Lear, Inc. v. Adkins, 395 U.S. 653 (1969), and Federal Circuit precedent for the proposition that the agreement cannot be read to preclude his claims because (1) the issue of patent validity was not raised in the litigation concluded by the agreement, (2) the 2007 litigation did not present Baseload or its predecessor Sky Power with an opportunity to take discovery on the subject of patent validity, and (3) the Settlement Agreement does not contain a sufficiently "clear and unambiguous undertaking not to challenge validity and/or enforceability of the patent." Opp. Summ. J. 3. These arguments are unpersuasive.

    As an initial matter, the language of the claim release contained in the Settlement Agreement plainly applies to Mr. Roberts' asserted patent invalidity allegations. By signing the Agreement, Baseload agreed that it waived not just the contract-related claims brought in the 2007 litigation, but any claim whatsoever —"known and unknown, suspected and unsuspected, disclosed and undisclosed, fixed and contingent"— that both derives from events occurring before March 18, 2008, and "arise[s] from or relate[s] in any way" to "any plan or effort to research or develop a flying electric generator." Settlement Agreement ¶ 3. Baseload's patent claims clearly fall into that category. They arise from events — the development and patenting of the FEG technology that is the subject of the '254 patent — that occurred prior to March 18, 2008, see Compl. Ex. A, and they relate to an "effort to research or develop a flying electric generator" in two ways: they focus on the process by which Mr. Roberts updated FEG technology, resulting in a patented invention, and they are meant to clear the way for Baseload to engage in its own attempts at developing and commercializing FEGs free of the risk of infringement litigation.

    Furthermore, the very breadth and detail of the release provisions convince the

Court that the parties to the 2008 Agreement intended to preclude *any* further litigation by one set of parties against the other. Paragraphs 3 and 5 amount to nearly five-hundred words guaranteeing the release of claims not only by Baseload and Mr. Resnick, but by virtually anyone and any entity over which they could conceivably exert control (parents, spouses, employees, etc.). They release any and all claims the parties "ever had, now have, or hereafter may have or be able to assert." Settlement Agreement ¶ 3. The agreement explicitly announces the parties' intentions to waive any limitations on release imposed by law. Settlement Agreement ¶ 5. The parties also promised that they were releasing all conceivable claims, with the exception of claims arising from the breach of the Settlement Agreement itself. Id. at 4. Such unambiguous and expansive language bars all claims between the parties. Lindell v. The Landis Corporation 401(k) Plan, No. 08-1462, 2009 WL 2241682, at *3 (D.D.C. July 28, 2009); Bailey v. Verizon Communications, Inc., 544 F. Supp. 2d 33, 36 (D.D.C. 2008).

According to Baseload, however, this language is not sufficiently "clear and unambiguous" to dispose of an allegation of patent invalidity. Mot. Summ. J. at 3. Baseload does not specify what language would be appropriately clear; presumably the plaintiff believes that only a release explicitly reciting the words "patent" and "invalid" could preclude later patent litigation. But such stringent specificity is not required by the law, contrary to Baseload's misreadings of the Supreme Court's decision in Lear and the Federal Circuit's decisions in Flex-Foot, Inc. v. CRP, Inc., 238 F.3d 1362 (Fed. Cir. 2001) and Foster v. Hallco Manufacturing Co., 947 F.2d 469 (Fed. Cir. 1991).

Foster establishes only that language in consent decrees said to give rise to issue preclusion on the subject of patent validity must be narrowly construed, Foster v. Hallco

9

Manufacturing Co., 947 F.2d at 481; issue preclusion is irrelevant here. The court in Flex-Foot upheld the waiver of patent invalidity claims in a settlement agreement partly because it found the waiver in that case "clear and unambiguous," Flex-Foot, Inc. v. CRP, Inc., 238 F.3d at 1370, but it never suggested that a release provision had to contain specific references to patent enforceability in order to be considered unambiguous. The release provision at issue in that case had resulted from an earlier round of patent litigation in which discovery into patent validity had been taken. See id. While the court upheld that release provision, it did not announce that *only* provisions arising from precisely the same set of circumstances and containing the same or similar language could pass muster.

Finally, the Supreme Court's Lear decision does not, as Baseload asserts, mean that *all* contractual waivers of allegations of patent invalidity are "trump[ed]" by "the important public interest in permitting full and free competition in the use of ideas which are in reality a part of the public domain." Opp. Summ. J. at 3 (citing Lear, Inc. v. Adkins, 395 U.S. at 670). In Lear, the Supreme Court examined the traditional common law doctrine regarding patent licenses, according to which a licensee was contractually estopped from attacking the validity of the patent held by the licensor. Id. at 656. The Court overturned the doctrine of licensee estoppel, reasoning that because "[l]icensees may often be the only individuals with enough economic incentive to challenge the patentability of an inventor's discovery," they cannot be blocked as a matter of course from challenging patents. Id. at 670. Otherwise, the federal interest in the invalidation of faulty patents would be seriously harmed. Id.

The concerns that animated the decision in Lear are absent here. Unlike patent licensees, parties that enter into settlement agreements in order to resolve pending litigation

against a patent holder do not as a rule have unique "economic incentive to challenge the patentability of an inventor's discovery." Lear, Inc. v. Adkins, 395 U.S. at 670. In addition, while the federal interest in Lear was weighed only against "the competing demands of the common law of contracts," 395 U.S. at 668, here it must be compared to the importance of enforcing settlement agreements. If parties to litigation cannot be assured that their intent as reflected in the plain language of their settlement agreements will be honored by the courts, settlement will become both more expensive and less common. This is an undesirable result weighing in favor of enforcement of provisions in settlement agreements that release a party's rights to challenge the validity of a given patent. Accord Flex-Foot v. CRP, Inc., 238 F.3d at 1369 (finding that the release-of-claims provision in a settlement agreement did not unduly interfere with the federal interest in the invalidation of improperly granted patents, and upholding the provision in light of "a strong public interest in settlement of patent litigation and . . . encourag[ing] patent owners to agree to settlements — thus fostering judicial economy").

Because Baseload plainly released its claims against Mr. Roberts in the 2008 Settlement Agreement, and because that release is enforceable, defendant's motion for summary judgment must be granted.

*B. Other Motions*

In light of the Court's award of summary judgment to Mr. Roberts, SWPC's motion to intervene has become moot, as has Baseload's motion to stay these proceedings. As a result, those motions are denied.

## III. CONCLUSION

For the above reasons, the Court will grant defendant's summary judgment motion and deny SWPC's motion to intervene and Baseload's motion to stay and for leave to take discovery. An Order consistent with this Opinion will issue this same day.

/s/_____
PAUL L. FRIEDMAN
United States District Judge

DATE: September 17, 2009